IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

STANLEY D. LINDSEY, #154569,   )
 )
     Petitioner,   )
 )
v.   )  CIVIL ACTION NO. 3:04-CV-342-WKW
 )           [WO]
 )
STEPHEN BULLARD, *et al.*,   )
 )
     Respondents.   )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This cause is before the court on a 28 U.S.C. § 2254 petition for habeas corpus

relief filed by Stanley D. Lindsey ["Lindsey"], a state inmate, on April 1, 2004.  In this

petition, Lindsey challenges a conviction for first degree robbery imposed upon him by

the Circuit Court of Tallapoosa County, Alabama on April 10, 2001.  The trial court

sentenced Lindsey as a habitual offender to life imprisonment for this conviction.

Lindsey filed a direct appeal of his robbery conviction in which he raised the

following claims for relief:  (1) the trial court erred in denying a *Batson*[1] motion; (2) the

trial court erred in giving a jury charge on flight when the evidence did not support the a

charge; (3) the State failed to provide discovery in the form of verbal statements made to

a law enforcement official; and (4) the prosecutor and a defense witness engaged in

---

[1]*Batson v. Kentucky*, 476 U.S. 79 (1986).

misconduct which discredited defense counsel.

On September 21, 2001, the Alabama Court of Criminal Appeals affirmed Lindsey's robbery conviction in a memorandum opinion. *See Respondents' Exhibit B-1 -- Lindsey v. State*, 837 So.2d 895 (Ala.Cr.App. 2001)(table decision).   In addressing Lindsey's claims, the appellate court stated that:

> First. Lindsey argues the trial court erred in denying his *Batson* . . . motion.  Lindsey contends the trial court erred when it failed to require the State to provide race-neutral reasons for its peremptory strikes.  We disagree.

> The venire included five black members, all of whom were struck. [The State used three of its peremptory strikes to remove African-American venire members, while Lindsey utilized two of his peremptory strikes to remove the remaining African-Americans from the jury pool.] Lindsey made a timely objection at trial, and argued that the State struck three blacks. Lindsey did not offer any additional evidence to support his *Batson* motion, and the trial court denied it.

> Where a trial court determines that no racial discrimination is shown, this Court will not reverse that determination unless that determination is "clearly erroneous".  See *Ex parte Branch*, 526 So.2d 609, 625 (Ala. 1987). The defendant must first make a prima facie case of discrimination before the prosecution is required to state its reasons for its peremptory strikes.  See *Ex parte Pressley*, 770 So.2d 143, 145 (Ala. 2000) [citing *Batson* as controlling authority]; *Stokes v. State*, 648 So.2d 1179, 1180 (Ala.Crim.App. 1994). Lindsey's argument was that the State had struck three blacks.  Lindsey presented no evidence that the State's strikes were racially motivated or otherwise improper.  This Court has held that statistics and opinion do not prove a prima facie case of discrimination.  See *Johnson v. State* [823 So.2d 1 (Ala.Crim.App. 2001) (citing *Batson* in addressing claim)].  Lindsey failed to make a prima facie case of discrimination, so the trial court's ruling on the *Batson* motion was not clearly erroneous.  Therefore, Lindsey's claim is without merit.

II.

Second, Lindsey claims the trial court erred in giving a jury charge on flight which, Lindsey contends, was not supported by the evidence. We disagree.

"In a criminal prosecution the state may prove that the accused engaged in flight to avoid prosecution. This principle is based upon the theory that such is admissible as tending to show the accused's consciousness of guilt. . . . "The reason for the defendant's flight is a question properly reserved for the jury after a consideration of all the relevant circumstances. Whether the evidence is sufficient to negate the inference that he fled because of a consciousness of guilt is a question for the jury, not the court." *Dallas v. State*, 711 So.2d 1101, 1109 (Ala.Crim.App. 1997), *aff'd*, 711 So.2d 1114 (Ala.1998) (internal citations and quotation marks omitted).

Evidence showed that Lindsey left Alexander City after the robbery. The State initially called Officer Williams, who apprehended Lindsey, to testify as to statements Lindsey made when taken into custody. The trial judge heard Officer Williams' testimony in camera. Lindsey was aware that Officer Williams was expected to testify that Lindsey informed him that he had been in Atlanta. The trial judge stated that he would provide a clear instruction on flight. The State then informed the court and defense counsel that it had decided against introducing Lindsey's statement to Officer Williams.

The defense called Officer Williams to testify before the jury as an adverse witness. Defense counsel asked Officer Williams what Lindsey said when he was taken into custody. Officer Williams testified, "I asked where he had been. I had been looking for him for awhile. And, he said he had been staying over in Atlanta." During cross-examination, Officer Williams said, "He really didn't say [how long he had been in Atlanta]. I told him I had been looking for him for a long time. He said, 'I have been in Atlanta, that is where I have been.'" From this testimony, the jury could have inferred that Lindsey left Alexander City to avoid connection with the crime or prosecution. See *Boyd v. State*, 715 So.2d 825, 845 (Ala.Crim.App. 1997). Because Lindsey introduced evidence of flight, the trial judge correctly instructed the jury on the subject of flight. See *Boyd v. State*, 715 So.2d at 845. It was for the jury to decide what weight to give the flight evidence.

3

Lindsey further claims that the jury charge on flight was improper as given. We disagree. Jury instructions are to be reviewed in light of the entire jury instruction, rather than viewed piecemeal. See *Ex parte Musgrove*, 638 So.2d 1360, 1367 (Ala. 1994). "The trial court is vested with broad discretion in formulating its jury charge, so long as the charge accurately reflects the law." *Clark v. State*, 621 So.2d 309, 324 (Ala.Crim.App. 1992). The jury charge accurately informed the jury that it was to determine whether the evidence constituted flight, and if so, what weight to give the evidence, if any. The trial judge here gave a detailed jury instruction, unlike the one-sentence instruction which the Alabama Supreme Court disapproved of in *Ex parte Weaver*, 678 So.2d 284, 285-86 (Ala. 1996). In viewing the instruction on flight, alone, as well as in context with the remainder of the instructions, we find no abuse of discretion in the jury instruction on flight.

III.

Lindsey claims the State failed to provide discovery in the form of statements allegedly made by Lindsey to law enforcement. At trial, the State asked Officer Williams, the officer who apprehended Lindsey, if, after he took Lindsey into custody, Lindsey had discussed his whereabouts after the robbery. Lindsey's general objection was overruled. Lindsey then claimed that the State had failed to provide him with requested discovery of any statements Lindsey made to law enforcement. Lindsey did not present this claim in the form of an objection, and did not receive an adverse ruling from the trial court. See *Harris v. State*, 745 So.2d 940, 945 (Ala.Crim.App. 1999). Therefore, this claim has not been preserved for our review.

Even had this issue been preserved, Lindsey would not be entitled to relief on this claim. During the State's case-in-chief, the trial judge held a side bar conference off the record, and then excused the jury to the jury room. The State called Williams to testify in camera. Officer Williams testified that he had been looking for Lindsey pursuant to a warrant on another charge prior to the indictment in the present case. The prosecutor asked Williams if, after Williams took Lindsey into custody, Lindsey had discussed his whereabouts since the robbery. Lindsey's general objection to the State's question was overruled. Lindsey then claimed the State had not provided him with discovery regarding statements of Lindsey. The State claimed the information was supplemental discovery, and Lindsey claimed to have never received the information. The trial judge allowed the

4

testimony, but cautioned the State and the witness that any additional information would likely result in a mistrial. The State decided not to question Williams about his discussion with Lindsey about Lindsey's whereabouts following the robbery. Lindsey then called Williams as a defense witness, and elicited testimony that Lindsey told Williams that he had moved to Atlanta after the robbery. While the State did not introduce evidence to the jury of Lindsey's statement, Lindsey did, so there is no merit to Lindsey's claim of alleged discovery violations. This Court will not allow Lindsey [to] invite error by introducing the evidence to the jury and then claim on appeal that his rights have been abridged. "A party cannot assume inconsistent positions at trial and on appeal, and a party cannot allege as error proceedings in the trial court that were invited by him or that were a natural consequence of his own action." *Taylor v. State*, [808 So.2d 1148, 1202-1203 (Ala.Crim.App. 2000), *aff'd*, *Ex parte Taylor*, 808 So.2d 1215 (Ala. 2001), *cert. denied*, *Taylor v. Alabama*, 534 U.S. 1086, 122 S.Ct. 824, 151 L.Ed.2d 705 (2002)].

To the extent Lindsey contends that the prosecutor and Officer Williams engaged in misconduct that violated his right to a fair trial by discrediting defense counsel in front of the jury, this issue was not raised at trial, and therefore was not preserved for our review. See *Spangler v. State*, 711 So.2d 1125, 1130 (Ala.Crim.App. 1997).

Based on the foregoing, the judgment of the trial court is therefore affirmed.

*Respondents' Exhibit B-1* at 1-3 (citations to record omitted) -- *Lindsey v. State*, 837 So.2d

895 (Ala.Cr.App. 2001)(table decision). Lindsey did not further appeal his conviction.[2]

In October of 2002, Lindsey filed a state post-conviction petition pursuant to Rule

---

[2]Although Lindsey's failure to complete the appeal process constitutes a procedural default, *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), the respondents do not assert this defense in response to the claims pending in this cause of action. A federal district court cannot raise sua sponte a procedural default based on a petitioner's failure to present his claims in accordance with the State's procedural rules. *Gray v. Netherland*, 518 U.S. 152, 165-166, 116 S.Ct. 2074, 2082 (1996) ("[B]ecause procedural default is an affirmative defense for the [State] . . . the [State] would have been obligated to raise procedural default as a defense, or lose the right to assert the defense thereafter."). Thus, this court cannot rely on the aforementioned default in addressing Lindsey's claims for habeas relief.

32, *Alabama Rules of Criminal Procedure*, with the Circuit Court of Tallapoosa County, Alabama in which he argued that: (1) appellate counsel denied him effective assistance because counsel (i) had a conflict of interest due to his signing petitioner's indictment setting the amount of bail during counsel's prior service as a state judge, (ii) failed to completely exhaust the direct appeal process, and (iii) failed to present claims of ineffective assistance of trial counsel on direct appeal; (2) the conviction was obtained in violation of his Fifth Amendment right against self-incrimination and *Miranda*[3] because officer Williams testified that petitioner said he had been in Atlanta since the time of the robbery; (3) trial counsel provided ineffective assistance because he (i) had a conflict of interest due to his service as a prosecutor, (ii) failed to adequately question officer Williams with respect to conflicts in Williams' testimony, (iii) abandoned his *Batson* challenge to the State's use of its peremptory strikes, and (iv) did not present a *Miranda* objection when officer Williams testified as to what petitioner had said to him with respect to petitioner's whereabouts since the robbery; and (4) the trial court lacked venue and jurisdiction to render judgment or impose sentence because the robbery did not occur in Tallapoosa County. *Respondents' Exhibit A* at 10-14 *Rule 32 Petition* at 1-5.

The Circuit Court of Tallapoosa County issued an order denying Lindsey's Rule 32 petition. *Respondents' Exhibit A* at 34 - *Order of November 15, 2002*. Lindsey appealed this decision and on application for rehearing the Alabama Court of Criminal Appeals

---

[3]*Miranda v. Arizona*, 384 U.S. 436 (1966).

issued a memorandum opinion affirming the trial court's decision to deny collateral relief.

The portion of this opinion relevant to the instant case reads as follows:

> Initially, we note that, on appeal, Lindsey raises two claims that were not included in his petition:  (1) that his indictment is void because, he says, it did not include what he claims was an essential element of first-degree robbery -- that he intended to deprive the victim of his property, and (2) that his conviction is void because, he says, the grand jury that returned the indictment against him was never sworn.  Neither of these claims is jurisdictional.  See, e.g., *Dobyne v. State*, 805 So.2d 733 (Ala.Crim.App. 2000), aff'd, 805 So.2d 763 (Ala. 2001) (holding that Rule 32 petitioner's claim that the indictment for capital murder during a robbery was void because it did not allege that he had the intent to deprive the owner of his property was not a jurisdictional claim because that fact did not have to be alleged in the indictment), and *Mitchell v. State*, 825 So.2d 864 (Ala.CrimApp. 2001) (holding that Rule 32 petitioner's claim that the indictment was void because the grand jury was never sworn is not a jurisdictional claim).  "An appellant cannot raise an issue on appeal from the denial of a Rule 32 petition which was not raised in the Rule 32 petition." *Arrington v. State*, 716 So.2d 237, 239 (Ala.Crim.App. 1997).  Because Lindsey did not include these claims in his petition, they are not properly before this Court for review.

> II.

> Lindsey also contends that his trial and appellate counsel were ineffective for various reasons; that the trial court lacked jurisdiction to render the judgment and to impose the sentence; and that his conviction was obtained in violation of his right against self-incrimination.

> In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the United States Supreme Court articulated two criteria that must be satisfied to show ineffective assistance of counsel.  A [convicted] defendant has the burden to show (1) that his counsel's performance was deficient and (2) that the deficient performance actually prejudiced the defense.  To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.  Furthermore, "a court must

7

indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.

## A.

First, Lindsey contends that the trial court lacked jurisdiction to render the judgment or to impose the sentence because, he says, the crime occurred in Coosa County, not Tallapoosa County, and that his trial counsel was ineffective for not objecting on this ground at trial.

As for the substantive issue, although couched in jurisdictional terms, this claim is actually a claim regarding venue, not jurisdiction and, thus, it is barred by Rule 32.2(a)(2) and (a)(5) because it was raised and addressed at trial and could have been, but was not, raised . . . on direct appeal.  See, e.g., *Cox v. State*, 660 So.2d 233, 235 (Ala.Crim.App. 1994) (Rule 32 petitioner's claim regarding venue was not jurisdictional and was, thus, barred).

As for the claim that his trial counsel should have objected to the alleged lack of venue, the record from Lindsey's direct appeal reflects that his trial counsel did object to the alleged lack of venue at trial, and that the trial court found the claim to be meritless because there was specific testimony from a law-enforcement officer that the crime had occurred in Tallapoosa County.  Therefore, trial counsel was not ineffective in this regard.

## B.

Lindsey next contends that his conviction was obtained in violation of his right against self-incrimination and that his trial counsel should have objected on this ground at trial.  Specifically, Lindsey contends that he was never advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), before he made a statement to police after his arrest, and that his trial counsel was ineffective for not moving to suppress the statement on that ground at trial.

The substantive claim is procedurally barred by Rule 32.2(a)(3) and (a)(5) because, as Lindsey concedes, it could have been, but was not, raised and addressed at trial and on [direct] appeal.

As for the ineffective-assistance claim, we find that Lindsey failed to plead sufficient facts to show that he was entitled to relief.  Other than the bare allegation that the statement was made after he had been arrested,

Lindsey alleged no facts regarding the circumstances surrounding the statement which would indicate that the statement was made pursuant to a custodial interrogation so as to require *Miranda* warnings. Therefore, Lindsey failed to satisfy the specificity requirements of Rule 32.6(b) and the pleading requirements of Rule 32.3 with respect to this claim.

C.

Finally, Lindsey contends that his trial and appellate counsel were ineffective because, he says, both had a conflict of interest while representing him. He argues that his trial counsel, Braxton Blake Lowe, had a conflict of interest because, he says, Lowe was working part-time as a city prosecutor at the same time he was representing Lindsey. He argues that his appellate counsel, Dale Segrest, had a conflict of interest because, he says, Segrest "signed the indictment returned against" him. (Lindsey's supplemental brief at p. 5)

> "To prevail on a conflict-of-interest claim, a defendant must show that 'an actual conflict of interest adversely affected his lawyer's performance.' *Cuyler v. Sullivan*, 466 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). If a defendant shows both that an actual conflict existed, and that the conflict adversely affected his lawyer's performance, prejudice may be presumed. In the absence of proof of these two factors, however, the defendant must affirmatively prove prejudice."
>
> *Smith v. State*, 745 So.2d 922, 938 (Ala.Crim.App. 1999).
>
> "'For counsel to be so ineffective in a conflict of interest context that an accused has been denied his Sixth Amendment right to counsel, counsel must be hampered by an "actual conflict of interest." *Ex parte Parker*, 704 S.W.2d 40, 41 (Tex.Ct.App. 1986); *Baty v. Balkcom*, 661 F.2d 391 (5th Cir. 1981), cert. denied, 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982).'
>
> "*Browning v. State*, 607 So.2d 339, 342 (Ala.Crim.App. 1992).
>
> "'An actual conflict is a real conflict. *McConico v. Alabama*, 919 F.2d 1543, 1546 (11th Cir. 1990). "A possible, speculative or merely hypothetical conflict does not suffice." *Lightbourne v. Dugger*, 829 F.2d 1012, 1023 (11th Cir. 1987),

9

cert. denied, 488 U.S. 934, 109 S.Ct. 329, 102 L.Ed.2d 346 (1988).  "An actual conflict of interest occurs when a defense attorney places himself in a situation 'inherently conducive to divided loyalties.'  *Castillo* [*v. Estelle*, 504 F.2d 1243 (5th Cir. 1974)] at 1245."  *Zuck v. Alabama*, 588 F.2d 436, 439 (5th Cir.), cert. denied, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979); *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985).  See also *Smith v. White*, 815 F.2d 1401 (11th Cir. 1987), cert. denied, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987).'
"607 So.2d at 342.

"'To prove that an actual conflict adversely affected his counsel's performance, a defendant must make a factual showing "that his counsel actively represented conflicting interests," *Cuyler v. Sullivan*, 466 U.S. [335] at 350, 100 S.Ct. [1708] at 1719 [64 L.Ed.2d 333 (1980)], ""and must demonstrate that the attorney 'made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other.'"" *Barham v. United States*, 724 F.2d 1529, 1532 (11th Cir.) [quoting *United States v. Mers*, 701 F.2d 1321, 1328 (11th Cir. 1983)], cert. denied, 467 U.S. 1230 [104 S.Ct. 2687, 81 L.Ed.2d 882] (1984).'
"*Molton v. State*, 651 So.2d 663 (Ala.Crim.App. 1994)."
*Brownlee v. State*, 666 So.2d 91, 96 (Ala.Crim.App. 1995).

In *Ex parte Borden*, 769 So.2d 950 (Ala. 2000), the Alabama Supreme Court addressed a similar issue as follows:

"Borden contends that one of his attorneys at trial had a conflict of interest, specifically, that the attorney, while involved in this case as defense attorney, had a continuing relationship with the Morgan County district attorney's office, as a special prosecutor.  Borden contends that the attorney, through his work as a special prosecutor in Morgan County, had a relationship with state law-enforcement agencies, because, Borden argues, the attorney depended on their investigative skills in order to prosecute his own Morgan

County criminal cases. Borden argues that his attorney's double judicial role--as a defense attorney in Lawrence County and a special prosecutor in Morgan County--creates a conflict of interest. This conflict, Borden argues, requires that he be given a new trial.

"'It is "a basic constitutional precept" that those prosecuted for criminal offenses have a right to the assistance of counsel during the proceedings. *Pinkerton v. State,* 395 So.2d 1080, 1085 (Ala.Crim.App.1980), cert. denied, 395 So.2d 1090 (Ala.1981). "Where a constitutional right to counsel exists, [the United States Supreme Court's] Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia,* 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981). "The importance of ensuring that defense counsel is not subject to any conflict of interest which might dilute loyalty to the accused has been long and consistently recognized." *Douglas v. United States,* 488 A.2d 121, 136 (D.C.1985). More than 45 years ago, the United States Supreme Court declared: "The right to counsel guaranteed by the Constitution contemplates the services of an attorney *devoted solely to the interests of his client.*" *Von Moltke v. Gillies,* 332 U.S. 708, 725, 68 S.Ct. 316, 324, 92 L.Ed. 309 (1948)(emphasis added [in *Molton*] ). The right to conflict-free counsel applies whether counsel is appointed or retained. See *Cuyler v. Sullivan,* 446 U.S. 335, 343-45, 100 S.Ct. 1708, 1715-16, 64 L.Ed.2d 333 (1980).' "*Molton v. State,* 651 So.2d 663, 668 (Ala.Crim.App.), on return to remand, 651 So.2d 672 (Ala.Crim.App.1994).

"The State argues that, to entitle a defendant such a Borden to a reversal of Borden's conviction, the conflict of interest alleged must be a true conflict, not a speculative or hypothetical one. '"In order to demonstrate a violation of his Sixth Amendment rights, a defendant must show that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980)." *Dallas v. State,*

711 So.2d 1101, 1111 (Ala.Crim.App.1997), aff'd, 711 So.2d 1114 (Ala.1998).  The State argues that the simple fact that Borden alleges a conflict of interest does not mean that a conflict of interest truly existed.  The State argues that this claim, even when considered under the standard imposed by the 'plain-error' doctrine (see Rule 39(k), Ala. R.App. P.), does not entitle Borden to a reversal.  We agree with the State's argument."

769 So.2d at 958[-959].

Rule 32.3 states that "[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief."  Rule 32.6(b) states that "[t]he petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds.  A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings."

With respect to his claim regarding trial counsel, Lindsey alleges that Lowe had a conflict of interest because he worked part-time as a city prosecutor while representing Lindsey in circuit court and, thus, had a relationship with law enforcement.  Although Lindsey alleges that Lowe's performance was adversely affected because, Lindsey says, Lowe failed to properly pursue certain issues at trial, Lindsey's assertion in this regard is but a bare allegation unsupported by sufficient facts.  Thus, Lindsey has failed to plead sufficient facts showing that Lowe had an actual conflict of interest that adversely affected his performance in representing Lindsey.

With respect to his claim regarding appellate counsel, Lindsey alleges that Segrest had a conflict of interest because Segrest allegedly "signed" the indictment against Lindsey.  The copy of the indictment Lindsey attached to his petition reflects that on the portion of the indictment setting Lindsey's bail, the line designated "Judge Presiding" is signed by "Dale Segrest." However, as the State correctly points out in its brief to this Court, there is no indication, either in the Rule 32 record or the record from Lindsey's direct appeal, that Segrest had any connection with Lindsey's case in a judicial capacity other than signing the portion of the indictment setting Lindsey's

12

bail when the indictment was returned.  See, e.g., *Crawford v. State*, 479 So.2d 1349, 1355 (Ala.Crim.App. 1985) (holding that there was no conflict of interest where trial counsel had formerly served as a municipal judge in another case with which the appellant had been involved).  Compare *Browning v. State*, 607 So.2d 339, 340 (Ala.Crim.App. 1992) (holding that an actual conflict of interest existed where trial counsel was the municipal judge who signed the search warrant for the appellant's residence in connection with the charged offenses).  The record does not suggest, and Lindsey does not allege, that Segrest presided over any portion of Lindsey's case, such as pretrial motions or any portion of the jury trial or sentencing.  Lindsey argues that Segrest's performance was affected because, according to Lindsey, Segrest did not raise on appeal any claims of ineffective assistance of trial counsel; however, Lindsey's argument in this regard is nothing more than a bare allegation unsupported by any specific facts.  In addition, the record from Lindsey's direct appeal reveals that the trial transcript was not prepared until two months after Lindsey's sentencing and, thus, appellate counsel could not have reasonably raised any claims of ineffective assistance of trial counsel in a timely filed motion for a new trial.  See e.g., *V.R. v. State*, [852 So.2d 194 (Ala.Crim.App. 2002)], and *Bracknell v. State*, [883 So.2d 724] (Ala.Crim.App. 2003), [*cert. denied*, 883 So.2d 728 (Ala. 2003)].  Therefore, Lindsey has not pleaded sufficient facts to show that Segrest had an actual conflict of interest, i.e., that he actively represented conflicting interests, that adversely affected his performance in representing Lindsey on appeal.

Based on the foregoing, the judgment of the circuit court summarily denying Lindsey's Rule 32 petition is affirmed.

*Respondents' Exhibit A-3* at 2-9 (citation to record omitted) -- *Lindsey v. State*, 897 So.2d 1246 (Ala.Crim.App. 2003) (table decision).  Although Lindsey filed a petition for writ of certiorari with the Alabama Supreme Court, the court denied this writ on January 16, 2004.

*Respondents' Exhibit A-2 -- Ex parte Lindsey*, 899 So.2d 317 (Ala. 2004)(table decision).

Lindsey filed this 28 U.S.C. § 2254 petition on April 1, 2004 in which he asserts the following claims for relief:

1.      The State utilized its peremptory strikes in violation of *Batson* and the trial court erred in not requiring the State to show that their strikes were race-neutral.

2.      The jury instruction on flight was not supported by the evidence.

3.      Prosecutorial and witness misconduct arising from (i) the State's failure to produce during pre-trial discovery the statement made by petitioner to officer Williams that petitioner had been in Atlanta since the robbery, and (ii) the provision of testimony by officer Williams regarding petitioner's whereabouts since the robbery.

4.      The trial court gave an erroneous instruction on flight.

5.      Trial and appellate counsel rendered ineffective assistance because each had a conflict of interest which adversely impacted petitioner's case.

6.      The state courts erred in denying relief on the claims of ineffective assistance of counsel.

7.      The trial court lacked proper venue and jurisdiction because petitioner was tried and convicted in a county where the crime did not take place.

8.      Petitioner was denied his Fifth Amendment right to remain silent with respect to his post-arrest statement advising officer Williams that he had been in Atlanta since the robbery.

The respondents argue that Lindsey's claims of prosecutorial misconduct, lack of

venue and Fifth Amendment violations are procedurally defaulted because Lindsey failed

14

to present these claims to the state courts in accordance with the requirements of the State's procedural rules.  *See Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *Holladay v. Haley*, 209 F.3d 1243, 1254 n. 9 (11th Cir.), *cert. denied*, 531 U.S. 1017 (2000); *Collier v. Jones*, 901 F.2d 770, 773 (11th Cir. 1990).

In support of this argument, the respondents maintain that the last state court to render judgment on these claims determined that Lindsey procedurally defaulted the claims under applicable state rules.[4]  *See Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992) (citations omitted) ("Federal review of a petitioner's claim is barred by the procedural-default doctrine if the last state court to review the claim states clearly and expressly that its judgment rests on a procedural bar, and that bar provides an adequate and independent state ground for denying relief.").

Even when a state court addresses the substantive merits of a defaulted claim in an alternative holding, the claim remains barred from federal review.

> [A] state court need not fear reaching the merits of a federal claim in an <u>alternative</u> holding.  By its very definition, the adequate and independent state-ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.  *See Fox Film Corp. v. Muller*, 296 U.S. 207, 210

---

[4]On direct appeal, the Alabama Court of Criminal Appeals determined that Lindsey's claim regarding the State's failure "to provide discovery in the form of statements allegedly made by Lindsey to law enforcement" had "not been preserved for . . . review." *Respondents' Exhibit B-1* at 2.  On appeal from the trial court's denial of the Rule 32 petition, the Alabama Court of Criminal Appeals held that Lindsey had procedurally defaulted the venue/jurisdiction claim as this claim "could have been, but was not, raised . . . on direct appeal." *Respondents' Exhibit A-3* at 3.  With respect to the Fifth Amendment challenge, the appellate court surmised that this claim was likewise defaulted in the Rule 32 proceeding because it could have been but was not raised at trial or on direct appeal. *Id*. at 4.

(1935). Thus, by applying this doctrine to habeas cases, [*Wainwright v. Sykes*, 433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989).

The respondents further argue that Lindsey's *Batson* challenge, his claims related to the jury instruction on flight and the claims of ineffective assistance of trial and appellate counsel do not entitle Lindsey to federal habeas relief as the Alabama Court of Criminal Appeals properly adjudicated these claims on the merits. *See Williams v. Taylor*, 529 U.S. 362, 404-405, 120 S.Ct. 495, 1518- 1523 (2000).

In support of this assertion, the respondents maintain that the adverse decisions of the state appellate court on direct appeal and during the Rule 32 proceeding were not contrary to or an unreasonable application of federal law nor an unreasonable determination of the facts in light of the evidence presented. Additionally, the respondents contend that to the extent Lindsey bases his claims on violations of state law he is not entitled to federal habeas relief.[5] It is likewise clear from the record that Lindsey's

---

[5]In his response to answer of the respondents, Lindsey does not dispute the respondents' arguments with respect to (i) his claims challenging the flight charge (issues 2 and 4), (ii) his claims of ineffective assistance of trial and appellate counsel relative to alleged conflicts of interest (issue 5), and (iii) the venue/jurisdiction challenge (issue7), and he concedes that federal habeas relief is not warranted on the claims. *Petitioner's November 15, 2004 Response - Court Doc. No. 24* at 5 ("The petitioner avers that the above grounds . . . appears to be grounds for state appellate court. Wherefore, the petitioner waives grounds 2, 4, 5, and 7."). As a precautionary measure and in the interest of justice, the court addresses these claims, *see infra* pp.23-28, in accordance with applicable federal law.

challenge to the testimony provided by officer Williams relative to flight is barred from review by this court as the Alabama Court of Criminal Appeals properly adjudicated the merits of this claim on direct appeal. *Williams v. Taylor*, *supra*.

Upon review of the § 2254 petition, the answer of the respondents, Lindsey's response to the answer, the undisputed record in this case and the opinions issued by the state courts, this court concludes that no evidentiary hearing is required and that the petition is due to be denied in accordance with the provisions of Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II.  DISCUSSION

### A.    *Claims Adjudicated by the State Courts*

Lindsey's request for federal habeas relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act. *Price v. Vincent*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852 (2003) ("A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)."); *Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518 (2000).  Under the requisite provisions of 28 U.S.C. § 2254(d), with respect to a claim adjudicated on the merits in state court, federal habeas relief from a state court judgment may not be granted unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an

17

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams*, 529 U.S. at 412-413 (2000), the Supreme Court held that:

Under the "contrary to" clause a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

The Court explained that habeas relief is appropriate when a petitioner demonstrates "that a decision by a state court is 'contrary to' . . . clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)." *Price*, 538 U.S. at 640, 123 S.Ct. at 1853 (2003).

Federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams,* [529 U.S. at 409],120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11th Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001), citing *Williams*, *supra*

("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'").

Moreover, a federal district court does not decide "the correctness *per se* . . . of the state court decision" but only the "objective reasonableness" of the decision. *Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001). Moreover, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. at 410, 120 S.Ct. at 1522 (emphasis in original). "Under § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." 529 U.S. at 411, 120 S.Ct. at 1522.

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)." *Price*, 538 U.S. at 639, 123 S.Ct. at 1852. The

Supreme Court admonishes that the evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d) . . ." 538 U.S. at 636, 123 S.Ct. at 1851.

With respect to Lindsey's *Batson* claim, his challenges to the jury instruction on flight, his challenge to the admission of testimony regarding flight, and the claims of ineffective assistance of trial and appellate counsel, the record establishes that those claims entitle Lindsey to no relief in this court as the state courts properly adjudicated these claims on the merits. *Williams v. Taylor*, 529 U.S. at 404-405, 120 S.Ct. at 1518-1523. Specifically, the decisions of the Alabama Court of Criminal Appeals on the aforementioned issues were not contrary to or an unreasonable application of federal law nor an unreasonable determination of the facts in light of the evidence presented to the state courts.

## 1.   The *Batson* Claim

The Alabama Court of Criminal Appeals applied the principles of *Batson* in determining that the trial court did not err in refusing to require the State to justify its reasons for exercising its peremptory strikes of African-American venire members because "Lindsey presented no evidence that the State's strikes were racially motivated or otherwise improper."[6] *Respondents' Exhibit B-1* at 1.

---

[6]The appellate court cited state cases, the findings of which are based on the Supreme Court's decision in *Batson*, in determining that Lindsey had failed to establish a prima facie case of discrimination.

The clearly established federal law on this issue is set forth in *Batson*, wherein the Court held that the Equal Protection Clause prohibits a prosecutor from challenging potential jurors solely on account of their race or on the assumption that African-American jurors as a group will be unable to impartially consider the State's case against a defendant. The Court established a three-part test for resolving Equal Protection challenges to a party's peremptory strike.  First, the party challenging the strike must establish a prima facie case of discrimination. *Batson*, 476 U.S. at 96.  Second, if the court finds that a prima facie case of discrimination is proven, the party making the peremptory strike is afforded the opportunity to articulate a non-discriminatory explanation for the strike. *Id.* at 96-98. Third, if a non-discriminatory reason is offered, the court must determine whether the party challenging the strike has met its burden of proving the existence of purposeful discrimination. *Id.*

To establish a prima facie case of racially discriminatory use of peremptory strikes, the party objecting to a peremptory strike bears the burden of establishing facts sufficient to support an inference of racial discrimination. *Id.* at 96.  In *Batson*, the Court offered two examples of circumstances that may support the an inference:  (1) engaging in a "pattern" of strikes against venire members of one race, or (2) questions or statements during voir dire or in exercising challenges that suggest a discriminatory purpose.  476 U.S. at 97.

The Alabama Court of Criminal Appeals' rejection of the *Batson* claim on direct appeal was not contrary to actual Supreme Court decisions and there does not exist a

Supreme Court case with materially indistinguishable facts as Lindsey's case.  Therefore, this court must turn to the question of whether the state court's rejection of the instant *Batson* claim involves "an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

In determining whether the state court's decision is an unreasonable application of the law as set forth in *Batson*, this court need not decide whether it would have reached the same result as the state court when deciding the issue in the first instance.  *Williams v. Taylor*, 529 U.S. at 411, 120 S.Ct. at 1522 ("Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."); *Wright v. Secretary for the Department of Corrections,* 278 F.3d 1245 (11th Cir. 2002); *Brown v. Head*, 272 F.3d 1308,1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").

The Alabama Court of Criminal Appeals' determination that the trial court did not err in finding that Lindsey failed to establish a prima facie case of racially discriminatory use of peremptory strikes is not objectively unreasonable.  The record demonstrates that, after striking the jury, defense counsel made a *Batson* motion arguing that the State used three of its ten peremptory strikes to remove blacks from the jury venire.  *Respondents'*

*Exhibit B - Trial Transcript* at 22-23.  Other than this statement, counsel presented no evidence that the prosecutor acted in a racially discriminatory manner.  *Id.*  The appellate court made an objectively reasonable determination that this assertion did not to raise an inference of racial discrimination sufficient to establish a prima facie case.  *See Central Alabama Fair Housing Center, Inc. v. Lowder Realty*, 236 F.3d 629, 636-637 (11th Cir. 2001) (numbers alone insufficient to establish prima facie case under *Batson*);  *Cochran v. Herring*, 43 F.3d 1404, 412 (11th Cir. 1995) ("[S]tatistical evidence is merely one factor which the court examines, and it is not necessarily dispositive.").

In light of the foregoing, this court concludes that the decision of the Alabama Court of Criminal Appeals that Lindsey failed to present evidence sufficient to constitute a prima facie case and, therefore, the trial court did not err in failing to require the State to justify its reasons for exercising its peremptory strikes was not an unreasonable application of the *Batson* standard.

**2.      The Ineffective Assistance of Counsel** Claims

The Alabama Court of Criminal Appeals applied *Strickland v. Washington*, 466 U.S. 668 (1984) in determining that the trial court did not err in denying Lindsey post-conviction relief on his claims of ineffective assistance of trial and appellate counsel. *Respondents' Exhibit A-3 -- Memorandum Opinion on Appeal of Rule 32 Petition* at 3.

*Strickland* sets forth the clearly established federal law on this issue.  Thus, this court will determine whether rejection of Lindsey's claims of ineffective assistance of trial and appellate counsel by the state courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial.  A habeas petitioner must satisfy the requirements of a two-pronged test to prevail on his claims of ineffective assistance of counsel.  First, the petitioner must establish that his attorney's performance "fell below an objective standard of reasonableness." *Strickland* 466 U.S. at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Id*.  Once this threshold test is met, the petitioner must then show that the deficient performance of his counsel prejudiced his defense.  *Id*. at 687.  To establish prejudice, the petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  Unreliability or unfairness does not result if counsel's ineffectiveness did not deprive the petitioner of any substantive or procedural right to which the law entitles him.  *Williams v. Taylor*, 529 U.S. at 393 n. 17 (2000).  There is a strong presumption that counsel's performance was reasonable and adequate and great deference is shown to choices dictated by reasonable trial and appellate strategy.  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  Any review of an ineffective

24

assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation." *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992).

The test utilized to evaluate a petitioner's claims of ineffective assistance of trial counsel applies equally to an analysis of claims of ineffective assistance of appellate counsel. *Jackson v. Dugger*, 931 F.2d 712, 715 (11th Cir. 1991). Appellate counsel cannot be deemed ineffective for failing to raise meritless claims on appeal. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

The Alabama Court of Criminal Appeals did not decide Lindsey's claims of ineffective assistance of trial and appellate counsel "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts" nor did the state appellate court apply a rule that contradicts governing federal law. *Williams v. Taylor*, 529 U.S. at 413, 120 S.Ct. at 1523. Consequently, the rejection of these claims by the Alabama Court of Criminal Appeals was not contrary to actual Supreme Court decisions. Moreover, a thorough review of the evidentiary materials submitted in this case establishes that the state court's denial of Lindsey's ineffective assistance of trial and appellate counsel claims was objectively reasonable. The decision issued by the Alabama Court of Criminal Appeals likewise constituted a reasonable determination of the facts in light of the

25

evidence presented by the parties.  Lindsey is therefore due no relief from this court on his claims of ineffective assistance of trial and appellate counsel.

### 3.      The Flight and Witness Misconduct Claims

Lindsey asserts that the trial court improperly instructed the jury on flight as the evidence did not support the an instruction.  He further argues that the instruction given was erroneous.  Lindsey also complains that the trial court erred in allowing officer Williams to testify regarding his whereabouts following the robbery.

To the extent that Lindsey bases his challenges to the trial court's actions related to the instruction and evidence related to flight, the claims provide no basis upon which federal habeas relief can be granted as they involve the interpretation and application of state law by the state courts.  *Beverly v. Jones*, 854 F.2d 412 (11th Cir. 1988).  A federal court has no authority to re-examine state court determinations on questions of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991).

The Alabama Court of Criminal Appeals determined that the evidence supported an instruction on flight and that the trial court did not abuse its discretion in instructing the jury on flight.  *Respondents' Exhibit B-1 -- Memorandum Opinion on Direct Appeal* at 2. The appellate court further determined that trial counsel elicited the testimony from officer Williams regarding Lindsey's whereabouts after the robbery.  Based on the foregoing, the

court held that it would "not allow Lindsey [to] invite error by introducing the evidence to the jury and then claim[ing] . . . that his rights have been abridged."  *Id.* at 3.

Lindsey is entitled to no relief as the state court properly adjudicated on the merits his claims challenging the jury instruction on flight and the evidence presented indicating flight.  *Williams v. Taylor*, 529 U.S. at 404-405, 120 S.Ct. at 1518-1519.  Specifically, the decision of the Alabama Court of Criminal Appeals affirming Lindsey's robbery conviction was not contrary to or an unreasonable application of federal law nor an unreasonable determination of the facts in light of the evidence presented to the state courts.

B.    *The Procedurally Defaulted Claims*

Lindsey's claims of prosecutorial misconduct during discovery, lack of venue/jurisdiction and self-incrimination are barred from federal habeas review as Lindsey failed to present these claims to the state courts in accordance with the State's applicable procedural rules.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Pruitt v. Jones*, 348 F.3d 1355 (11th Cir. 2003); *Smith v. Jones*, 256 F.3d 1135, 1137 (11th Cir. 2001).  Thus, this court may reach the merits of procedurally defaulted claims only if the petitioner shows either (1) cause for the procedural default and actual prejudice arising out of the violation of federal law, *Coleman v. Lindsey*, 501 U.S. 722

(1991), or (2) a resulting fundamental miscarriage of justice if the federal court does not consider the merits of the claims. *Schlup v. Delo*, 513 U.S. 298, 320 (1995).

In the documents before this court, Lindsey has demonstrated neither cause for his failure to present the prosecutorial misconduct, venue and self-incrimination claims to the state courts in compliance with applicable procedural rules nor the existence of actual prejudice emanating from infringement of federal law. Nevertheless, this court may still reach the merits of Lindsey's defaulted claims in order to prevent a fundamental miscarriage of justice.

The miscarriage of justice standard is directly linked to innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Innocence is not an independent claim; rather, it is the "gateway" through which a petitioner must pass before a court may consider constitutional claims which are defaulted. *Id.* at 315. This exception applies where a petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup v. Delo*, *supra*. "To establish actual innocence, [a habeas petitioner] must demonstrate that . . . 'it is more likely than not that no reasonable juror would have convicted him.' *Schlup v. Delo*, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)." *Bousley v. United States,* 523 U.S. 614, 623 (1998). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-2519, 120 L.Ed.2d 269 (1992)." *Id.* at 623-624.

*Schlup* observes that

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. . . .  To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

513 U.S. at 324.

Lindsey has failed to make the requisite showing of actual innocence.  He has presented no evidence nor suggested that any exists which could satisfy the standard set forth in *Schlup*.  Consequently, Lindsey's procedurally defaulted claims are foreclosed from federal habeas review.


## III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The petition for habeas corpus relief filed by Stanley D. Lindsey be DENIED.

2.  This case be DISMISSED with prejudice.

It is further

ORDERED that on or before April 27, 2006 the parties may file objections to the said Recommendation.   Objections must specifically identify the findings in the

29

Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings in this Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to September 30, 1981.)

Done this 14th day of April, 2006.

/s/ Vanzetta Penn McPherson
UNITED STATES MAGISTRATE JUDGE